IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 6, 2021

## STATE OF TENNESSEE v. XAVIER MONTELIOUS RILEY

**Appeal from the Circuit Court for Madison County**
**No. 19-411    Donald H. Allen, Judge**

_____

### No. W2020-00580-CCA-R3-CD
_____

Xavier Montelious Riley, Defendant, entered a best interest guilty plea with the length and manner of the service of the sentence to be determined following a sentencing hearing. The trial court denied an alternative sentence and imposed an effective sentence of ten years and six months to be served in confinement. After a review of the record and applicable law and finding no error, we affirm the judgments of the trial court.

**Tenn. R. App. P.3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT W. WEDEMEYER, JJ., joined.

Jeremy Brent Epperson, District Public Defender,[1] and Gregory D. Gookin, Assistant District Public Defender, Jackson, Tennessee, for the appellant, Xavier Montelious Riley.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural Background

Defendant was indicted in Counts 1 and 2 for aggravated child abuse, Counts 3 and 4 for aggravated child neglect, Counts 5 and 6 for aggravated child endangerment of a child under eight years of age, Count 7 for possession of a Schedule VI controlled substance with intent to sell, Count 8 for possession of a Schedule VI controlled substance with intent

---

[1] George Googe retired as District Public Defender for the 26th Judicial District effective January 1, 2021. Jeremy Brent Epperson was sworn in on December 29, 2020, and assumed the office on January 1, 2021.

to deliver, and Count 9 for possession of drug paraphernalia. On January 13, 2020, pursuant to a plea agreement, Defendant entered a best interest guilty plea in Counts 5 and 6 to a lesser offense of Class B felony attempted aggravated child endangerment. Defendant pled guilty as indicted in Counts 7, 8, and 9. As part of the plea agreement, the State dismissed Counts 1, 2, 3, and 4. The agreement called for the length and manner of service of the sentence to be determined at a sentencing hearing.

Following a bifurcated sentencing hearing, the trial court sentenced Defendant as a Range I standard offender to ten years and six months for attempted aggravated child endangerment in Count 5, and two years for possession of Schedule VI controlled substance with intent to sell in Count 7. The court sentenced Defendant to eleven months and twenty-nine days for possession of drug paraphernalia in Count 9. The trial court merged Count 6 into Count 5 and Count 8 into Count 7. The judgments of conviction for Counts 6 and 8 do not provide a specific sentence. The trial court ordered all sentences be served concurrently, found that Defendant was not an appropriate candidate for alternative sentencing, and ordered Defendant to serve his effective sentence of ten years and six months in the Tennessee Department of Correction.

**Plea Submission Hearing**

After the trial court addressed Defendant personally in open court, thoroughly informed Defendant of his rights, and determined that he understood and waived all of the rights listed under Tennessee Rule of Criminal Procedure 11, the State provided the factual basis for the plea. The State said that, on November 18, 2018, Defendant and his girlfriend, Breanna Surratt, were at home with Defendant's and Ms. Surratt's seven-and-a-half-month-old son. Defendant left his son in his bed while he went to get a glass of water. When Defendant returned, he saw that his son was turning blue and realized that his son had ingested a "bump" of heroin that Defendant had in a pouch on the back of his cell phone that he had left under a pillow on the bed. Defendant and Ms. Surratt drove their son to Jackson-Madison County General Hospital ("JMCGH"). Upon arrival, Defendant told the medical staff that his son had ingested heroin. The medical staff administered Narcan to counter the effects of the drug overdose. The Tennessee Department of Children's Services ("DCS") was contacted by someone at JMCGH, and law enforcement responded. Defendant told the officers the same version of events that he had relayed to hospital personnel. Defendant was taken into custody and charged in association with his son's drug overdose. Defendant's son was transferred to Le Bonheur Hospital in Memphis and was released from that facility approximately twenty-four hours later. Investigators later executed a search warrant at Defendant's home where they found digital scales with what they believed to be heroin residue, a marijuana grinder, a marijuana blunt in the ashtray, and a total of 86.22 grams of marijuana found in five different containers both downstairs and in the attic. Laboratory tests performed by the Tennessee Bureau of

Investigation ("TBI") of the 29.8 grams of the substance that was found downstairs confirmed that it was marijuana. The lab did not test 56.42 grams found in three bags in the attic. Defendant agreed that the facts presented by the State were substantially correct.

At the conclusion of the guilty plea submission hearing, the trial court ordered that Defendant immediately submit to a drug screen at the local Community Corrections office and continue to report for random drug screens until the March 2, 2020 sentencing hearing.

## Sentencing Hearings

*March 2, 2020 sentencing hearing*

The State entered the presentence report without objection and ended its proof.

Defendant acknowledged that he was on misdemeanor probation when he was arrested in the instant case. His probation was revoked, and he finished serving his eleven-month and twenty-nine-day sentence in the prior case on August 2, 2019. Defendant was then able to make bail in this case, and upon release from jail, he moved in with his parents. Defendant said that, since his release, he had obtained custody of his son and had secured employment with Kirkland's. He produced a letter from his supervisor attesting to his job. Defendant testified that, since pleading guilty on January 13, 2020, he had obeyed the trial court's order to submit to drug screens and had been screened weekly at the local Community Corrections office. He testified that "there had been no issues" and that he had passed every drug screen. Defendant said that he had worked with DCS and "taken all of [his] classes and passed all of the drug tests." Defendant said that he still lived with his parents and saw his son every day. He introduced a letter from the pastor where he was attending church. Defendant said that these were his first felony charges and that he knew he was facing a sentence of eight to twelve years for each of the Class B felony convictions. He said that he was "doing the best [he had] ever been in [his] life." He testified that he "was drug[-]free," that he just got his driver's license back, and that he was going to church. He said that "[e]verything has changed" and that he was "doing nothing that he did before [he] was convicted."

On cross-examination, Defendant said that he was on probation for driving on a restricted license and simple possession of hydrocodone at the time of the instant offenses.

Lorrie Cole, Defendant's mother, testified that Defendant had changed his life since his arrest. She said that Defendant was "demonstrating responsibility and was not hanging out with old friends." Ms. Cole saw Defendant's son frequently and said that he was now two years old and was a "happy and healthy child." Ms. Cole said that Defendant called

her from the hospital on the night his son ingested heroin to explain what occurred. She said that Defendant seemed very upset and remorseful about his actions.

After argument of counsel, the trial court stated that one of the factors the court could consider in terms of probation was current drug use. The court asked if Defendant would agree to submit to a drug screen that morning before the court sentenced Defendant. Counsel for Defendant stated that Defendant was willing to take a drug test that day. Marcus Jones, an employee of Madison County Community Corrections, came to the courthouse and administered a urinalysis screen. Mr. Jones then testified that the results of the test of Defendant's urine was positive for cocaine. The trial court cancelled Defendant's bond, and Defendant was taken into custody. The sentencing hearing was continued to the next day.

*March 3, 2020 sentencing hearing*

Defendant's counsel announced that he had spoken with Defendant, who said that he had gone to "some sort of party" the previous weekend and drank "some kind of punch" and that Defendant claimed he did not knowingly use cocaine. After drinking the punch, Defendant became unconscious. Someone at the party called Defendant's father who came to the house, got Defendant, and drove him to JMCGH. Counsel said Defendant had received a dose of Narcan after the test showed that he was positive for cocaine and Fentanyl.

Defendant's counsel requested laboratory verification of the drug screen. The trial court reset the hearing to March 9, 2020, to give Mr. Jones time to submit the urine provided by Defendant on March 2, 2020, for laboratory testing.

*March 9, 2020 sentencing hearing*

The trial court received into evidence without objection the results of Defendant's drug screen and the laboratory affidavit reflecting that Defendant had tested positive for both methamphetamine and cocaine. Defendant asked to make an allocution. He apologized to his family, to Ms. Surratt, and his "kids." He said that he wanted "a chance to get back to [his] life." He said he wanted to prove "to everybody [that he] can be a father and go back to work while [he] still had a job." He said that he "just wanted to be there and be a role model for [his] kids. "

The trial court imposed the sentences at the conclusion of the sentencing hearing. The court stated that it had considered the evidence presented and the exhibits introduced at the guilty plea hearing and the sentencing hearings, including the presentence report, the risk assessment, the employment verification letter, and the letter from Defendant's pastor.

The court stated that it would consider the principles of sentencing and the arguments made by Defendant and the State concerning the length of sentence and whether Defendant should receive an alternative sentence or serve the sentence in incarceration.

In discussing the nature and circumstances of the offenses, the court recounted the seriousness of the injury to Defendant's infant son from the ingestion of heroin. The court noted that the infant was unconscious, discolored, and totally unresponsive when he was taken to JMCGH. The court acknowledged that Defendant was truthful when he told the hospital staff and law enforcement officers how the infant had come to ingest heroin. The court opined that the only good thing was that the infant did not die. The court placed great weight on the circumstances surrounding the child's accessibility to and ingestion of heroin.

The court noted that, during the execution of the search warrant on Defendant's residence, law enforcement officers found approximately three ounces of marijuana in five different bags, a marijuana grinder, and digital scales indicating that Defendant possessed the marijuana for the purpose of selling it from the home where his infant lived. The court found that Defendant had not been truthful when he testified at the March 2, 2020 sentencing hearing that he had remained "drug-free" since his January 13, 2020 plea hearing.

Based on the presentence report, the trial court found that Defendant had seven prior Class A misdemeanor convictions and seven prior Class B or C misdemeanor convictions and a long history of "criminal behavior" involving the use of illegal drugs. The report stated that Defendant began using marijuana in 2001, cocaine in 2003, and heroin in 2017. The court found that enhancement factor (1) applied because Defendant had "a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." Tenn. Code Ann. § 40-35-114(1) (2020). The report showed that Defendant attended "Pathway's from May of 2016 through April of 2018 for substance abuse treatment." The court noted that Defendant "had an opportunity to try to get off these substances, cocaine and heroin, but unfortunately for him he has continued to use."

Based on the presentence report, the court found that, at the time Defendant committed the offenses in this case, he was on eleven months and twenty-nine days' probation for possession of a Schedule III controlled substance in Circuit Court Case No. 15-435 and that the probation in Case No. 15-435 was ordered to be served consecutively to an eleven months and twenty-nine days' probation for driving on a revoked license in Jackson City Court Case No. 19-1137. The court also noted that, during the time Defendant was on probation in Circuit Court Case No. 15-435, he was convicted of driving on revoked license and evading arrest in city court.

The court found that Defendant's probation was revoked in Case No. 15-435 for failure to report and for the charges in the instant case. The court noted that Defendant's failure to report occurred before Defendant was charged in this case.[2] The court noted that Defendant had "been given multiple chances at probation," both by the city court and the trial court, and that "measures less restrictive than confinement have been frequently applied to [D]efendant without success." The court found that enhancement factor (8) applied because Defendant "failed to comply with the conditions of a sentence involving release to the community." Tenn. Code Ann. § 40-35-114(8) (2020). The court found that enhancement factor (13) applied because Defendant was on probation when he committed the instant offenses. Tenn. Code Ann. § 40-35-114(13) (2020). The court gave great weight to enhancement factor (13).

The trial court found that the general mitigating factor (13) applied because Defendant had secured employment, but the court gave "slight weight" to that factor. The Strong R assessment, which was completed on February 14, 2020, showed a "low risk of recidivism." The court found that the report, which was completed before Defendant overdosed on the weekend before the March 2, 2020 sentencing hearing, was not very accurate in this case. The court stated that it also considered Defendant's mental and physical condition.

The trial court sentenced Defendant, as a Range I standard offender, to concurrent terms of ten years and six months for attempted aggravated child endangerment in Count 5, two years for possession of Schedule VI controlled substance with intent to sell in Count 7, and eleven months and twenty-nine days for possession of drug paraphernalia in Count 9.

## Notice of Appeal

On April 8, 2020, a timely notice of appeal was filed with the Clerk of the Appellate Courts. The notice states that the order appointing trial counsel on the appeal is attached. The notice contains a certificate of service signed by appellate counsel dated April 5, 2020.[3]

---

[2] The presentence report does not contain information about the revocation of Defendant's probation, and the record on appeal does not include any violation warrants or orders revoking probation. Defendant admitted at the March 2, 2020 sentencing hearing that he was on misdemeanor probation at the time he committed the offenses in this case, that his probation was revoked, and that he completed service of his sentence.

[3] On April 6, 2020, while still represented by counsel, Defendant filed a pro se "Motion of B for Correction or Reduction of Sentence." The motion stated that it was filed by "Defendant B, by counsel and pursuant to Rule (35b) of the Tennessee Rules of Criminal Procedure." The motion does not contain a certificate of service. On April 20, 2020, again while still represented by counsel, Defendant filed a pro se "Motion of Defendant B to Withdraw Plea of Guilty." The motion stated that it was filed by "Defendant B, by counsel and pursuant to Rule 32(f) of the Tennessee Rules of Criminal Procedure." This motion also

**Analysis**

On appeal, Defendant claims that the trial court erred in imposing a sentence of ten years and six months for the Class B felony in Count 5 and erred in denying an alternative sentence. The State claims that the trial court properly exercised its discretion in imposing the sentences and in denying an alternative sentence. We agree with the State.

**Standard of Review**

When the record clearly establishes that the trial court imposed a sentence within the appropriate range after a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2020); *Bise*, 380 S.W.3d at 706. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2020), Sentencing Comm'n Cmts.

**Attempted Aggravated Child Endangerment of a Child Eight Years of Age or Less**

"A parent or custodian of a child eight (8) years of age or less commits child endangerment who knowingly exposes such child to or knowingly fails to protect such child from abuse or neglect resulting in physical injury or imminent danger to the child." Tenn. Code Ann. § 39-15-401(c)(1) (2018). The offense of *aggravated* child endangerment is codified at Tennessee Code Annotated section 39-15-402, which states in pertinent part:

> (a) A person commits the offense of . . . aggravated child endangerment, who commits . . . child endangerment, as defined in § 39-15-401(c) and:

> (1) [t]he act of . . . endangerment results in serious bodily injury to the child; [or]

---

does not contain a certificate of service. Neither motion explains why Defendant refers to himself as "Defendant B." The record does not contain an order concerning either motion.

(2) [a] deadly weapon, dangerous instrumentality, controlled substance or controlled substance analogue is used to accomplish the act of . . . endangerment[.]

. . . .

(b) A violation of this section is a Class B felony; provided, however, that, if the abused, neglected or endangered child is eight (8) years of age or less, . . . the penalty is a Class A felony.

Tenn. Code Ann. § 39-15-402(a)(1)(2), (b) (2018). Defendant was indicted in Count 5 under section -402(a)(1) and in Count 6 under section -402(a)(2).

"Criminal attempt is an offense one (1) classification lower than the most serious crime attempted[.]" Tenn. Code Ann. § 39-12-107(a) (2018). As indicted, aggravated child endangerment in both Counts 5 and 6 was a Class A felony. Attempted aggravated child endangerment was, therefore, a Class B felony.

## Sentencing Range for Class B Felony

At the conclusion of the sentencing hearing, the trial court "shall first determine the appropriate range of sentence." Tenn. Code Ann. § 40-35-210(a) (2020). The sentencing range for a Range I standard offender convicted of a Class B felony is "not less than eight (8) years nor more than twelve (12) years." Tenn. Code Ann. § 40-35-112(a)(2) (2020). The sentence imposed by the trial court was within the appropriate range for Class B felony attempted aggravated child endangerment.

## Length of Sentence and Manner of Service

In determining the specific sentence to impose on a defendant and the manner in which that sentence will be served, a trial court shall consider the following:

(1) [t]he evidence, if any, received at the trial and the sentencing hearing;

(2) [t]he presentence report;

(3) [t]he principles of sentencing and arguments as to sentencing alternatives;

(4) [t]he nature and characteristics of the criminal conduct involved;

(5) [e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) [a]ny statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee;

(7) [a]ny statement the defendant wishes to make on the defendant's own behalf about sentencing; and

(8) [t]he result of the validated risk and needs assessment conducted by the department and contained in the presentence report.

Tenn. Code Ann. § 40-35-210(b) (2020).

**Purposes and Principles of Sentencing**

Tennessee Code Annotated section 40-35-102, states that "[t]he foremost purpose of [the Tennessee Criminal Sentencing Reform Act of 1989] is to promote justice, as manifested by [section] 40-35-103." Subsection 40-35-102(3) provides:

(3) Punishment shall be imposed to prevent crime and promote respect for the law by:

(A) [p]roviding an effective general deterrent to those likely to violate the criminal laws of this state;

(B) [r]estraining defendants with a lengthy history of criminal conduct;

(C) [e]ncouraging effective rehabilitation of those defendants, where reasonably feasible, by promoting the use of alternative sentencing and correctional programs that elicit voluntary cooperation of defendants; and

(D) [e]ncouraging restitution to victims where appropriate[.]

Tenn. Code Ann. § 40-35-102(3) (2020).

Tennessee Code Annotated section 40-35-103(1) (2020), which lists certain principles to be applied to "implement the purposes of this chapter," provides:

(1) Sentences involving confinement should be based on the following considerations:

- 9 -

(A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(2020).

**Imposition of Sentence of Ten Years and Six Months**

The trial court explained the reasons for imposing a sentence of ten years and six months for Count 5, Class B felony attempted aggravated child endangerment, at the conclusion of the sentencing hearing. The trial court stated that it considered the evidence that was presented and the exhibits introduced at the guilty plea hearing and the sentencing hearings, including the presentence report. The court stated that it considered "the principles of sentencing and the arguments made by counsel as to sentencing alternatives." The court considered and gave great weight to the nature and circumstances related to Defendant's infant son's ingestion of heroin and specifically the fact that Defendant testified untruthfully at the sentencing hearing about his recent drug use. The court stated that this weighed heavily on the court's sentencing decision because it was Defendant's drug use that led to his infant son's having access to the heroin that was ingested. The court stated that it also considered Defendant's mental and physical condition. The court considered and weighed the enhancement and mitigating factors and properly applied three enhancement factors and one mitigating factor based on the evidence presented. The court allowed Defendant to make an allocution immediately before pronouncing sentence. The court considered that the Strong R assessment showed a "low risk of recidivism." The court found that the report, which was completed before Defendant overdosed on the weekend before the March 2, 2020 sentencing hearing, was not very accurate in this case.

The court found that the sentence imposed was necessary to "[provide] an effective general deterrent to those likely to violate the criminal laws of this state," to restrain Defendant who had "a lengthy history of criminal conduct," and that "measures less restrictive than confinement have frequently or recently been applied unsuccessfully Defendant." Tenn. Code Ann. § 40-35-102(3)(A), (B)(2020). The court based its sentence

- 10 -

of incarceration on all three of the considerations listed in Tennessee Code Annotated section 40-35-103(1)(2020).

We determine that the trial court properly applied the purposes and principles of our Sentencing Act, and we therefore review the court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *Bise*, 380 S.W.3d 682. A trial court "is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008) (quoting Tenn. Code Ann. § 40-35-210(d)). "[Appellate courts are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Carter*, 254 S.W.3d at 346.

We determine that the trial court imposed a within-range sentence of ten years and six months in a manner consistent with the purposes and principles of the Sentencing Act.

### Alternative Sentence

Having found that the trial court did not abuse its discretion in sentencing Defendant to a term of ten years and six months, we determine that Defendant was not eligible for probation or a sentence of split confinement followed by probation because his sentence was in excess of ten years. Tenn. Code Ann. § 40-35-303(a) (2020). Nothing in the record indicates that Defendant filed a petition or argued for a placement in a community-based alternative to incarceration. Tenn. Code Ann. § 40-35-104 (2020). Even though Defendant was not eligible for probation and did not file a petition for community corrections, the trial court articulated its reasons for denying any alternative sentence. The court stated that Defendant testified at his sentencing that he had been "drug-free" since he pled guilty, even though he had overdosed the weekend before the sentencing hearing. The court found that Defendant gave untruthful testimony regarding his current drug use. *See State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999) (finding that a defendant's lack of candor reflected on her potential for rehabilitation). The court found that Defendant's recent use of drugs, coupled with his long history of drug use, indicated that he was not a good candidate for any alternative sentence. The trial court also found that "any type of probation" would unduly depreciate the seriousness of the offenses for which Defendant had pled guilty and that Defendant had stopped reporting to probation even before his arrest in this case. The trial court did not abuse its discretion in denying an alternative sentence.

- 11 -

**Conclusion**

The trial court did not abuse its discretion in sentencing Defendant.  We affirm the judgments of the trial court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE